UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

# CRIMINAL MINUTES - GENERAL

| Case No. | CR 10-1234 CAS | Date | February 14, 2011 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| CATHERINE JEANG | LAURA ELIAS | Fred Slaughter<br>Timothy Searight |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| TIMOTEO GOMEZ | X | X | | RICHARD GOLDMAN<br>CHRIS DYBWAD | X | | X |

**Proceedings:**  **DEFENDANT'S MOTION *IN LIMINE* FOR LIMITED ATTORNEY-CONDUCTED VOIR DIRE** (filed 01/27/11)

**GOVERNMENT'S MOTION *IN LIMINE* TO INTRODUCE EVIDENCE OF PRIOR CONVICTIONS UNDER FEDERAL RULE OF EVIDENCE 609** (filed 01/31/11)

**GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE IMPROPER DEFENDANT HEARSAY STATEMENTS AND REFERENCES TO PUNISHMENT AND SYMPATHY** (filed 01/31/11)

**DEFENDANT'S MOTION TO SUPPRESS STATEMENTS** (filed 02/01/11)

## I.    INTRODUCTION

On November 16, 2010, the government filed an indictment charging defendant Timoteo Gomez with two counts of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii). Count One charges that on October 6, 2010, defendant possessed with the intent to distribute 27.2 grams of methamphetamine. Count Two charges that on October 19, 2010, defendant possessed with the intent to distribute 5.6 grams of methamphetamine.

On January 27, 2011, defendant filed a motion *in limine* to conduct limited attorney-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                O

**CRIMINAL MINUTES - GENERAL**

conducted voir dire. On January 31, 2011, the government filed a motion *in limine* to introduce evidence of prior convictions under Federal Rule of Evidence 609, and a motion *in limine* to preclude improper defendant hearsay statements and references to punishment and sympathy. On February 1, 2011, defendant filed a motion to suppress statements. On February 8, 2011, the government filed an opposition to defendant's motion to suppress statements. On February 9, 2011, defendant filed an opposition to the government's motion *in limine* to preclude improper defendant hearsay statements and references to punishment and sympathy.

On February 14, 2011, the Court held an evidentiary hearing on the parties' motions pursuant to Fed. R. Crim. P. 12(b)(3)(C). At the hearing, the Court received into evidence the declarations of Senon Saldana and defendant, a Miranda rights card, an audio recording of the arrest, an initial police report authored by Saldana dated October 6, 2010, and a report of investigation interview of Saldana dated January 13, 2011. Saldana and defendant testified at the hearing. Having carefully considered the record before the Court and the arguments of both parties, the Court finds and concludes as follows.

## II.    FACTUAL BACKGROUND

### A.    October 6, 2010 Count

On October 6, 2010, Detectives Senon Saldana and Mario Dorado of the Riverside Police Department ("RPD") narcotics unit were conducting surveillance at a residence in Riverside, California in an unmarked surveillance van. Declaration of Senon Saldana ("Saldana Decl.") ¶ 2. The detectives suspected the residence to be a location where drug transactions were conducted on a regular basis. Id. At approximately 1:30 p.m., Saldana observed a white Cadillac Escalade, driven by defendant, arrive at the residence and depart approximately ten to fifteen minutes later. Id. Suspecting that the occupant of the vehicle had been at the residence to engage in a drug transaction, Saldana and Dorado followed behind and alongside the vehicle after it departed from the residence. Id. ¶ 3. Saldana observed that the driver of the vehicle was not wearing his seat belt and was talking on his cell phone. Id. Saldana radioed fellow RPD Officer Brian Galbreath, who was driving a marked patrol vehicle, to conduct a traffic stop of the vehicle. Id.

When Galbreath arrived, the vehicle pulled into a parking lot. Id. ¶ 4. As the vehicle was passing through the parking lot, Saldana observed a bag thrown from the driver's side window. Id. Saldana exited the unmarked surveillance van and observed that the bag contained a white crystalline substance that appeared to be methamphetamine. Id. Galbreath proceeded to stop and order defendant out of the vehicle. Id. ¶ 5. Galbreath placed defendant in handcuffs and had him sit on the curb. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CRIMINAL MINUTES - GENERAL**

Saldana testified that he approached defendant as defendant sat on the curb, identified himself as a narcotics investigator, and said to defendant, "I saw you throw that." Saldana testified that defendant responded, "You saw that." Id. Saldana testified that he informed defendant that he wanted to speak with him and led him to the surveillance van. Id. Saldana testified that as he was walking defendant to the van, defendant said, "Can we work something out?" Id. ¶ 7. Suspecting that defendant may have been meeting another vehicle in the parking lot, Saldana told defendant not to talk with him further until they were inside the van. Id.

Saldana testified that once inside the van, he again told defendant that he saw him throw the bag out of the window. Again, defendant responded, "You saw that." Thereafter, Saldana informed defendant that he was in custody. Id. ¶ 8. According to Saldana, defendant again asked if Saldana could help him. Id. Saldana testified that he informed defendant that he was going to read him his rights, and defendant asked if he was being arrested. Id. Saldana testified that he told defendant that he was being arrested, and proceeded to read defendant his rights from a printed Miranda card. Id. Saldana testified that he asked defendant if he understood his rights, to which defendant responded, "Yes." Id. According to Saldana, defendant subsequently made statements about selling and using methamphetamine. Id.

Saldana testified that defendant offered to provide the detectives information to help his case. Id. ¶ 9. Saldana testified that defendant provided information about a person from whom defendant said he could obtain large quantities of methamphetamine. Id. Defendant did not identify the person by name, but apparently told Saldana that he could engage in a drug transaction with the person that day. Id. Saldana testified that he was interested in pursuing the information provided by defendant, but informed defendant that a decision as to whether defendant could work with law enforcement was a decision that had to be made by the District Attorney's Office. Id.

As Saldana was driving defendant to the Riverside County Jail, defendant told Saldana that he could place a call at that moment to set-up a methamphetamine transaction and asked to use his cell phone. Id. ¶ 11. Saldana testified that he allowed defendant to make the call as he listened. Id. According to Saldana, defendant appeared to converse with a person about a drug transaction. Id.[1]

Defendant testified that he was never advised of his Miranda rights, did not waive those

---

[1] Saldana testified that he was able to hear both ends of the conversation because defendant was using the "direct connect" function on the cell phone, which places the call in a loud speaker form. Id. ¶ 11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

## CRIMINAL MINUTES - GENERAL

rights, and did not make any statements regarding the sale of methamphetamine. Declaration of Timoteo Gomez ("Gomez Decl.") ¶¶ 3–5.

Saldana testified that before defendant was booked, Saldana provided defendant his cell phone number and explained to defendant the process of becoming a cooperating informant. Saldana Decl. ¶ 12. According to Saldana, defendant subsequently called him and Saldana informed defendant that the Riverside County District Attorney's Office did not approve a cooperation agreement with defendant. Id. ¶ 13.

After his October 6, 2010 arrest, defendant was released on bond. It was discovered that defendant had a previous federal methamphetamine drug conviction and that defendant was on supervised release. A federal arrest warrant was issued for defendant.

### B.     October 19, 2010 Count

On October 19, 2010, officers took up positions near a residence where they believed defendant might be located. Defendant exited the residence, got into a car, and drove away. Officers stopped defendant a short distance from the residence and arrested him. While searching defendant's person, officers found two bags containing methamphetamine in his pants pocket. One bag contained approximately one gram of methamphetamine and the second bag contained approximately five grams of methamphetamine.

## III.   DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

### A.     Pre-Miranda Statements

Defendant argues that his statements in response to Saldana questioning him about throwing the bag out the vehicle window are inadmissible because he was not provided with Miranda warnings before making the statements.

In order to enforce the Fifth Amendment, the government must advise a defendant of his Miranda rights before commencing custodial interrogation. DeWeaver v. Runnels, 556 F.3d 995, 1000 (9th Cir. 2009) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). In this case, defendant was "in custody" when Saldana approached him at the curb. See Stansbury v. California, 511 U.S. 318, 320 (1994) (per curiam) ("In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'") (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (internal quotation marks and citation omitted)); see also United States

v. Crawford, 372 F.3d 1048, 1059 (9th Cir. 2004) (en banc). The testimony established that when Saldana approached defendant, he had been ordered out of his vehicle, detained, placed in handcuffs, and was sitting on the curb. The Court concludes that under these circumstances, there was either a formal arrest or a restraint on defendant's freedom of movement of the degree typically associated with a formal arrest.[2]

The parties dispute whether Saldana's statement, "I saw you throw that," informing defendant that Saldana had observed defendant throw the bag out the window was an interrogation. "Not every question asked in a custodial setting constitutes 'interrogation.'" United States v. Mata-Abundiz, 717 F.2d 1277, 1279 (9th Cir. 1983) (quoting United States v. Booth, 669 F.2d 1231, 1237 (9th Cir. 1983)). However, the Court finds that Saldana's statement to defendant was reasonably likely to elicit an incriminating response from defendant, and therefore was an interrogation within the meaning of Miranda. See Rhode Island v. Innis, 446 U.S. 291, 301 (1980) (The applicable test is whether the question is "reasonably likely to elicit an incriminating response from the suspect.").

Thus, the Court concludes that Saldana's two statements to defendant that he saw defendant throw the bag out of the vehicle should have been preceded by Miranda warnings. Accordingly, the Court hereby GRANTS defendant's motion to suppress statements he made in response to Saldana's statement that he saw defendant throw the bag out of the vehicle window. See Michigan v. Harvey, 494 U.S. 344, 350 (1990) (statements taken in violation of Miranda may not be used in the prosecution's case in chief, however, if voluntary, "they are admissible to impeach conflicting testimony by the defendant.") (citing Harris v. New York, 401 U.S. 222 (1970)).

### B. Advisement and Waiver of Miranda Rights

Based on his testimony at the suppression hearing, defendant argues that the Court should suppress his remaining statements because he was never advised of or waived his Miranda rights before or during the custodial interrogation in the surveillance van. Mot. at 8.

The government may not use as evidence statements stemming from a custodial interrogation of the defendant unless it demonstrates that the suspect was advised of his right to remain silent, that anything he says can be used against him in a court of law, that he has the

---

[2] The Court further concludes that defendant was in custody when Saldana and defendant were in the surveillance van and Saldana again informed defendant that he observed defendant throw the bag out of the vehicle.

right to counsel, and that if he cannot afford counsel one will be appointed for him prior to questioning. Miranda, 384 U.S. at 478–79. It is only after such warnings have been recited that "the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement." Id. at 479; see also United States v. Dickerson, 530 U.S. 428, 435 (2000) (Miranda "established that the admissibility in evidence of any statement given during custodial interrogation of a suspect would depend on whether the police provided the suspect with four warnings."). The waiver need not be explicit and may be inferred from a defendant's words or actions. North Carolina v. Butler, 441 U.S. 369, 373 (1979). For example, "a suspect may impliedly waive the rights by answering an officer's questions after receiving Miranda warnings." United States v. Rodriguez-Preciado, 339 F.3d 1118, 1127 (9th Cir. 2005). The government bears the burden of proof in a motion to suppress a statement in violation of Miranda, and must prove waiver by a preponderance of the evidence. See Colorado v. Connelly, 479 U.S. 157, 168 (1986).

The government maintains that Saldana read defendant his Miranda rights and defendant knowingly waived his rights. The government argues that it stretches credulity to believe that Saldana not only made up the facts about advising defendant of his Miranda rights, but also fabricated that defendant asked to use his cell phone to contact a drug trafficker as defendant was being driven to jail. Opp'n at 8. The government further argues that the Court should consider defendant's criminal history and previous experience with the justice system in determining whether defendant waived his Miranda rights. Id. (citing Derrick v. Peterson, 924 F.2d 813, 824 (9th Cir. 1990)). The government contends that defendant's previous plea agreement from a federal conviction in Illinois demonstrates that defendant has experience with the justice system and is knowledgeable about his rights. Id. (citing Exh. 2, Plea Agreement in United States v. Timothy G. Gomez, CR No. 96-30051(C.D. Ill. Feb. 24, 1997) ¶¶ 7–8, 16). The government further maintains that defendant's plea agreement also lends credibility to Saldana's testimony that defendant was willing to cooperate with law enforcement to provide information. Id.

Having carefully considered the testimony, and for the reasons stated by the government, the Court finds by a preponderance of the evidence that Saldana advised defendant of his Miranda rights in the surveillance van and defendant voluntarily waived his Miranda rights.

### C. Defendant's Post-Miranda Statements

Finally, defendant argues that Saldana's failure to timely advise him of his Miranda rights render his remaining statements, including his post-advisement statements, inadmissible under Missouri v. Seibert, 542 U.S. 600, 617 (2004).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CRIMINAL MINUTES - GENERAL**

In <u>Oregon v. Elstad</u>, the Supreme Court held:

> [A]bsent deliberately coercive or improper tactics in obtaining in initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of <u>Miranda</u> warnings to a suspect who has given a voluntary but unwarned statement should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights.

470 U.S. 298, 314 (1985).  A defendant's post-<u>Miranda</u> statements may be inadmissible, however, where law enforcement officers employ a two-step, "question-first" interrogation process.[3]  <u>See</u> <u>Seibert</u>, 542 U.S. at 617.  The Ninth Circuit has ruled that a district court "must suppress postwarning confessions obtained during a deliberate two-step interrogation where the midstream <u>Miranda</u> warning – in light of the objective facts and circumstances – did not effectively apprise the suspect of his rights."  <u>United States v. Williams</u>, 435 F.3d 1148, 1157 (9th Cir. 2007) (adopting Justice Kennedy's concurrence in <u>Seibert</u>).  Where law enforcement officers do not deliberately employ the two-step interrogation strategy, <u>Elstad</u> continues to govern the admissibility of post-warning statements.  <u>Id.</u> at 1158.  Deliberateness may be found if "objective evidence and any available subjective evidence, such as an officer's testimony, support an inference that the two-step interrogation procedure was used to undermine the <u>Miranda</u> warning."  <u>Id.</u> at 1158. Objective evidence includes "the timing, setting and completeness of the prewarning interrogation, the continuity of police personnel and the overlapping content of the pre- and post-warning statements."  <u>Id.</u> at 1159.

On the present record, the Court finds that law enforcement did not employ a two-step interrogation process based on a deliberate violation of <u>Miranda</u>.  The subjective evidence, including Saldana's testimony, does not support the conclusion that law enforcement utilized a two-step interrogation process.  Similarly, the objective evidence weighs against finding that Saldana engaged in intentional misconduct.  Prior to any interrogation of defendant, Saldana witnessed defendant throwing a bag containing a crystalline substance out of his vehicle, and Saldana had taken possession of that bag, which according to Saldana, appeared to contain

---

[3] "A two-step interrogation involves eliciting an unwarned confession, administering the <u>Miranda</u> warnings and obtaining a waiver of <u>Miranda</u> rights, and then eliciting a repeated confession."  <u>United States v. Garcia-Hernandez</u>, 550 F. Supp. 2d 1228, 1234 (S.D. Cal. 2008) (citing <u>Seibert</u>, 542 U.S. at 609–10).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

## CRIMINAL MINUTES - GENERAL

methamphetamine. Moreover, in Saldana's initial contact with defendant, Saldana was primarily concerned with furthering his investigation by verifying that defendant threw the bag out of his vehicle. For his part, defendant appeared to be willing to talk with Saldana, at one point even asking Saldana, "Can we work something out?" After the brief un-Mirandized encounter, Saldana walked defendant to the surveillance van, where Saldana confirmed that defendant threw the bag out of the vehicle window.[4] After receiving this confirmation, defendant was promptly advised of and waived his Miranda rights. Thereafter, defendant admitted using and selling methamphetamine. Nothing in this sequence of events suggests that Saldana utilized a two-step interrogation process to deliberately evade the Miranda rule. Accordingly, the Court DENIES defendant's motion to suppress statements he made after he was advised of and waived his Miranda rights.

Accordingly, the Court GRANTS in part and DENIES in part defendant's motion to suppress statements.

## IV.   DEFENDANT'S MOTION *IN LIMINE* FOR LIMITED ATTORNEY-CONDUCTED VOIR DIRE

Defendant requests that the Court permit each party forty-five minutes of attorney-conducted voir dire. Mot. at 3. Defendant argues that attorney-conducted voir dire will promote the selection of an impartial jury due to the attorney's unique knowledge of the case. Id. at 4–5. The government does not oppose defendant's motion.

Rule 24(a) of the Federal Rules of Criminal Procedure governs the voir dire process, and provides:

> The court may examine prospective jurors or may permit the attorneys for the parties to do so. If the court examines the jurors, it must permit the attorneys for the parties to ask further questions that the court considers proper or submit further questions that the court may ask if it considers them proper.

---

[4] The Court further notes that unlike Seibert, here, there was no repeated confession because the second time Saldana interrogated defendant about whether he had thrown the bag out of the vehicle window, Saldana had not yet administered Miranda warnings. See Seibert, 542 U.S. at 617–18. The record does not suggest that Saldana repeated this inquiry after advising defendant of his Miranda rights.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA  O

**CRIMINAL MINUTES - GENERAL**

Fed. R. Crim. P. 24(a). The Court has in its "sound discretion" the authority to exclusively conduct voir dire. See United States v. Baldwin, 607 F.2d 1295, 1297 (9th Cir. 1979); see also United States v. Jones, 722 F.2d 528, 529 (9th Cir. 1983) ("The trial court is given wide latitude to determine how best to conduct the voir dire.") (citation omitted). The Court finds that defendant has failed to present a sufficiently compelling reason why the parties should be given an opportunity to conduct voir dire. In the Court's experience, the Court's own voir dire is "reasonably sufficient to test the jury for bias or partiality." Jones, 722 F.2d at 529. The parties will be afforded the opportunity to submit agreed-upon questions to the Court that the Court may ask if it considers them proper. Furthermore, if there is cause, the Court will permit the parties to conduct follow up voir dire at sidebar. Accordingly, the Court hereby DENIES defendant's motion *in limine* for limited attorney-conducted voir dire.

### V. GOVERNMENT'S MOTION *IN LIMINE* TO INTRODUCE EVIDENCE OF PRIOR CONVICTIONS UNDER FEDERAL RULE OF EVIDENCE 609

On October 7, 1997, defendant was convicted of conspiracy to possess with intent to distribute and to distribute methamphetamine, in violation of 21 U.S.C. § 846. On October 3, 2006, defendant was convicted of false personation, in violation of Cal. Penal Code § 529(3). Should defendant testify at trial, the government moves to inquire into and introduce evidence of defendant's prior convictions pursuant to Federal Rules of Evidence 609(a)(1) and 609(a)(2). Mot. at 1.

#### A. Conspiracy to Distribute Methamphetamine

For the purpose of attacking the credibility of a witness, Rule 609(a)(1) permits the introduction of "evidence that an accused has been convicted of [a crime punishable by death or imprisonment in excess of one year] . . . if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Fed. R. Evid. 609(a)(1).[5] Rule 609(b) places a presumptive time limit on the admissibility of the prior

---

[5] The relevant factors that a district court should consider in balancing the probative value of evidence of a defendant's prior convictions against that evidence's prejudicial effect include "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of defendant's testimony; and (5) the centrality of defendant's credibility."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                O

**CRIMINAL MINUTES - GENERAL**

conviction if "if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date." Fed. R. Evid. 609(b).

Here, defendant's conviction for conspiracy to distribute methamphetamine was a felony punishable by imprisonment in excess of one year. In addition, it appears that defendant was released from confinement on December 4, 2004, within ten years of the instant case. Accordingly, the prior conviction is not presumptively remote pursuant to Fed. R. Evid. 609(b). The Court finds, however, that in light of defendant's two more recent 2006 convictions for methamphetamine possession consistent with personal use, the impeachment value of the 1997 felony conviction for conspiracy to possess with intent to distribute is slight. Furthermore, given the nature of the 1997 felony, which bears an identical name to the charged offense in this case, the risk of prejudice to defendant is high. The Court recognizes, however, that if defendant testifies his credibility will be in issue and the 1997 conviction has some impeachment value. Accordingly, if defendant testifies, the Court is inclined to permit the government to cross-examine defendant about his 1997 felony conviction. To mitigate the risk of prejudice to defendant, the Court will "sanitize" the conviction and not allow the government to introduce evidence regarding the nature of the felony for which defendant was convicted – conspiracy to possess with intent to distribute methamphetamine. See <u>Hursh</u>, 217 F.3d at 768.

### B. False Personation

Because defendant's 2006 conviction for false personation required "proof of an act of dishonesty or false statement" by defendant, it is admissible to impeach defendant if he chooses to testify. Fed. R. Evid. 609(a)(2).[6] Indeed, defendant was convicted for impersonating another for his own financial benefit or in a manner that would cause another financial loss in violation of section 529(3) of the California Penal Code, which provides that

> every person who <u>falsely</u> personates another in either his private or official

---

<u>United States v. Hursh</u>, 217 F.3d 761, 768 (9th Cir. 1987).

[6] Federal Rule of Evidence 609(a)(2) provides that "evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness." Fed. R. Evid. 609(a)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CRIMINAL MINUTES - GENERAL**

> capacity, an in such assumed character . . . [d]oes any other act whereby, if done by the person <u>falsely</u> personated, he might, in any event, become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture, or penalty, or whereby any benefit might accrue to the party personating, or to any other person [i]s punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both such fine and imprisonment.

Cal. Penal Code § 529(3) (emphasis supplied).

Accordingly, the Court hereby GRANTS the government's motion *in limine* to introduce evidence of prior convictions under Federal Rule of Evidence 609.

## VI. GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE IMPROPER DEFENDANT HEARSAY STATEMENTS AND REFERENCES TO PUNISHMENT AND SYMPATHY

The government moves to preclude defendant from eliciting statements he made to law enforcement officers suggesting that he was a methamphetamine user, unless the government offers the statements into evidence or defendant testifies at trial. Mot. at 1–2. The government argues that defendant's statement that he was a user of methamphetamine is admissible only if offered against him, and defendant may not elicit his own prior statement. <u>Id.</u> at 3 (citing Fed. R. Evid. 801(d)(2)(A); <u>United States v. Ortega</u>, 203 F.3d 675, 682–83 (9th Cir. 2000); <u>United States v. Fernandez</u>, 839 F.2d 639, 640 (9th Cir. 1988); <u>United States v. Willis</u>, 759 F.2d 1486, 1501 (11th Cir. 1985)). The government further seeks to exclude at trial any reference to defendant's possible sentence and topics relating to sympathy, such as familial status. <u>Id.</u> at 1, 4–6. The government contends that defendant's potential sentence and topics relating to sympathy are not relevant to proving the charges in the indictment, and the jury is forbidden from considering punishment in its consideration of the evidence. <u>Id.</u> at 5 (citing Fed. R. Evid. 401; 9th Cir. Crim. Jury Instr. 9.15 (2010)).

Defendant argues that his statements regarding possession of methamphetamine for personal use are inculpatory and therefore admissible. Opp'n at 5–6. Defendant argues that by admitting to his possession of methamphetamine, he subjected himself to criminal liability in the present case, as well as liability in a pending case for violating the conditions of his supervised release. <u>Id.</u> (citing 21 U.S.C. § 844(a)). Defendant contends that the cases the

government cites are inapposite because in those cases the defendants sought to introduce *exculpatory* statements. Id. at 6. Defendant further asserts that Federal Rule of Evidence 611(a)[7] recognizes the dangers inherent in the selective admission of only a portion of defendant's oral statements, and permits the Court to exercise authority to admit defendant's complete oral statement, similar to what the rule of completeness, Rule 106,[8] does for writings. Id. at 7–8 (citing United States v. Collicott, 92 F.3d 973 (9th Cir. 1996); United States v. Mussaleen, 35 F.3d 692, 696 (2d Cir. 1994); United States v. Branch, 91 F.3d 699, 727–28 (5th Cir. 1996); United States v. Li, 55 F.3d 325, 329 (7th Cir. 1995)).

The Court finds that defendant's statements to law enforcement officers regarding his personal use of methamphetamine are inadmissible hearsay. Although in a broad sense defendant's statement that he is a methamphetamine user is inculpatory, in the context of the instant case, such a statement is clearly exculpatory as it tends to negate the element of intent to distribute. See 21 U.S.C. § 841(a)(1). Thus, if the Court were to admit the statement, defendant would be "able to place his exculpatory statements 'before the jury without subjecting himself to cross-examination, precisely what the hearsay rule forbids.'" Ortega, 203 F.3d at 682 (citing Fernandez, 839 F.2d at 640). Moreover, contrary to defendant's argument, Rule 611(a) does not provide a basis for admitting defendant's otherwise inadmissible oral statements. See Collicott, 92 F.3d at 983. Accordingly, the Court GRANTS the government's motion *in limine* to preclude improper defendant hearsay statements and references to punishment and sympathy.[9]

---

[7] Rule 611(a) provides: "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a).

[8] Rule 106 provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106.

[9] Defendant does not appear to challenge the government's effort to preclude defendant from introducing evidence about defendant's potential sentence and topics relating to sympathy.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                          O

# CRIMINAL MINUTES - GENERAL

## VII.  CONCLUSION

In accordance with the foregoing, the Court hereby GRANTS in part and DENIES in part defendant's motion to suppress; DENIES defendant's motion *in limine* for limited attorney-conducted voir dire; GRANTS the government's motion *in limine* to introduce evidence of prior conviction under Federal Rule of Evidence 609; and GRANTS the governments motion *in limine* to preclude improper defendant hearsay statements and references to punishment and sympathy.

IT IS SO ORDERED.

|  | 00 | : | 40 |
|---|---|---|---|
| Initials of Deputy Clerk | | | CMJ |